[No. B063495. Second Dist., Div. Two. Aug. 4, 1993.]

ROBERT A. ROURKE et al., Plaintiffs and Appellants, v.
NICK TROY, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, IV A and B, and V.

**COUNSEL**

Bruce Singman for Plaintiffs and Appellants.

Stanley H. Getz for Defendant and Appellant

OPINION

NOTT, J.—

I

This appeal follows the trial court's denial of an application for order of sale of a dwelling filed by plaintiffs and appellants, judgment creditors who sought to enforce judgments against defendant and appellant Nick Troy by having his residence sold. Concluding that appellants could not obtain a minimum bid under Code of Civil Procedure section 704.800,[1] the trial court denied the application. Our interpretation of the statute does not lead to the same conclusion, and we disapprove of its reasoning on that point. As explained below, the application should have been denied because it was not timely under section 704.750,[2] and we affirm the order on that alternate ground.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

IV.

DISCUSSION

The Appeal

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

C.  The Term "All Liens and Encumbrances" Under Section 704.800 Does
Not Include the Lien of the Judgment Creditor Requesting the Sale

The trial court did not fix the amount of the homestead or the fair market value of the dwelling because it concluded that section 704.800[9] was determinative; and it found that the section prohibits the sale of a dwelling unless

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] Plaintiffs and appellants, of course, may refile subject to compliance with section 704.750.

*See footnote, *ante,* page 880.

[9] The statute provides in pertinent part: "(a) If no bid is received at a sale of a homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property, including but not limited to any attachment or judgment lien, the homestead shall not be sold

a court can anticipate a bid that exceeds the amount of the homestead plus any additional liens and encumbrances, including the lien of the judgment creditor seeking the sale. Under the trial court's reasoning, if a bid were to match the highest appraisal of $325,000, and the maximum homestead exemption of $75,000 plus the $9,728.21 balance of the trust deed were deducted from the sale price, defendant's share of the remaining proceeds would fall far short of the $461,381.76 due to appellants. Since appellants' liens could not be satisfied, the court concluded that "all liens and encumbrances" could not be satisfied and concluded further that it was prohibited from ordering the sale. While the trial court's reading of the statute appears to be supported by the statutory language, it is not supported by the statutory scheme or by the statutory history.

In construing a statute, we begin with the fundamental rule that we must determine the intent of the Legislature to effectuate the purpose of the law. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]; *Khan* v. *Medical Board* (1993) 12 Cal.App.4th 1834, 1842 [16 Cal.Rptr.2d 385].) Generally, courts look first to the language of the statute to determine meaning. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 485 [208 Cal.Rptr. 724, 691 P.2d 272].) When statutory language is capable of two interpretations, we must look at the purpose of the law to ascertain the Legislature's intent. (*Ibid.*) Words must be construed in context and statutes must be harmonized with each other to the extent possible. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) In addition, legislative history is a legitimate and valuable aid in determining statutory purpose.[10] (24 Cal.3d at p. 844.) It is well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain. (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].)

The phrase "all liens and encumbrances" is capable of two interpretations. The Legislature could have intended the phrase to include the lien of the executing judgment creditor, or it could have meant only those liens which preceded the judgment lien being executed. The latter interpretation is supported by other parts of the statutory scheme. For example, as noted by the trial court, the distribution of the proceeds of the sale as found in section

---

and shall be released and is not thereafter subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year."

[10]Therefore, we have, on our own motion, taken judicial notice of various legislative materials in order to ascertain the legislative intent of section 704.800. (Evid. Code, §§ 459, 452, subd. (c).)

704.850 places the judgment creditor fourth on the list, separate from and later than "all liens and encumbrances."[11] In addition, once the dwelling is sold to enforce the judgment, "the lien under which it is sold [and] any liens subordinate thereto . . . on the property sold are extinguished." (§ 701.630, made applicable to the homesteaded property by § 704.780; *Little* v. *Community Bank* (1991) 234 Cal.App.3d 355, 360 [286 Cal.Rptr. 4].) Section 701.630's application would be pointless if the phrase "all liens and encumbrances" was not limited to those senior to the lien being executed. Thus, it appears that in light of these two sections, section 704.800 does not require the bid to include the amount due to the judgment creditor. For further support, we turn to the legislative history.

Section 704.800 was adopted in 1982 as part of a comprehensive statutory scheme governing the enforcement of judgments contained in Assembly Bill No. 707. (Stats. 1982, ch. 1364, § 2, p. 5168.)[12] When the bill was first introduced in March 1981, it did not contain the language at issue here, which was added by a Senate amendment in April 1982. According to a memorandum prepared by the California Law Revision Commission in May 1982, under the earlier version the sale of a dwelling required "only the satisfaction of the total of (1) preferred labor claims and state tax liens that are superior to the judgment creditor's lien and (2) the amount of the homestead exemption." The memorandum noted that the phrase "all liens and encumbrances on the property" was added to afford greater protection to the debtor in the event of an involuntary sale. The Commission explained the import of the language: "The purchaser at the execution sale must pay in cash as a minimum bid the total of (a) the amount of all liens and encumbrances (except that the judgment creditor need not pay the amount of his or her judgment in cash) and (b) the amount of the homestead exemption. It is unlikely that any sales will actually occur since the required minimum bill will ordinarily leave nothing in addition for the judgment creditor on the sale."

The commission quite clearly differentiated between the lien of the judgment creditor and other liens and encumbrances and determined that only the latter must be satisfied before the sale is approved.

---

[11]Section 704.850 provides, in pertinent part: "(a) The levying officer shall distribute the proceeds of sale of a homestead in the following order: (1) To the discharge of all liens and encumbrances, if any, on the property. (2) To the judgment debtor in the amount of any applicable [homestead] exemption . . . . (3) To the levying officer for the reimbursement of . . . costs . . . . (4) To the judgment creditor to satisfy . . . costs and interest accruing after issuance of the writ[, and] . . . the amount due on the judgment . . . . (5) To the judgment debtor in the amount remaining."

[12]The section superseded former sections 1253 and 1254 of the Civil Code. (Legis. Com. com.-Sen. 1982 Addition.) Under the prior law, a minimum bid had to exceed the amount of the homestead exemption "plus the aggregate amount of all liens and encumbrances on the property . . . ." (Former § 1254, subd. (a), repealed by Stats. 1982, ch. 497, § 8, p. 2137, operative July 1, 1983.)

In addition, there is a memorandum by the Senate Committee on the Judiciary analyzing the June amendments to the bill. The memorandum cites the California Law Revision Commission as its source and states that the bill would provide that "a homestead could not be sold for less than the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property. According to the Commission, this provision is intended to enforce the principle that the debtor's property should not be sold at a sacrifice if *none* of the proceeds are to be applied to pay the debtor's debts." (Italics added.)

An August 1982 Senate amendment added the phrase "including but not limited to any attachment or judgment lien" to the reference to all liens and judgments. That additional language did not seem to change the section's meaning. In an analysis by the Assembly Office of Research of the Senate's amendments dated August 26, 1982, we find: "The Senate Amendments . . . [s]pecify that other lien holders are to be paid before the judgment creditor upon the sale of a homestead. An additional court order would be required for any sale, and the debtor's property would be protected from sale at a sacrifice if *none* of the proceeds are to be applied to pay the debtor's debts." (Italics added.)

These analyses of the language at issue in this case do not support the trial court's reading of the statute. The Legislature was not attempting to ensure that all debts, including the judgment being executed by the sale, be satisfied by the sale of the dwelling. Rather, its purpose was to ensure that senior liens and encumbrances would be paid. It was repeatedly noted that the Legislature wanted to avoid the situation in which none of the sale proceeds went to pay debts. We place great meaning on the fact that the memoranda did not indicate that the Legislature wanted *all* debts to be satisfied by the proceeds of the sale.

The legislative materials also include a summary of the bill that was prepared by the Law Revision Commission and sent to then-Governor Brown in September 1982. It states: "The new law provides that, if a homestead declaration has been recorded, a judgment lien attaches to the surplus value of the homestead over the total of (1) all liens and encumbrances and (2) the amount of the homestead exemption." It is clear from the use of the phrase in that sentence that "all liens and encumbrances" excludes the lien of the judgment creditor seeking the sale. Furthermore, if the Legislature meant that "all liens and encumbrances" included the lien of the judgment creditor seeking the sale, it would have emphasized that the surplus value would have to equal the amount of that particular lien.

Based on the foregoing, we hold that "all liens and encumbrances" in section 704.800 refers to those which are senior to the lien of the executing

judgment creditor, and that the sale of the dwelling in this case is not prohibited by section 704.800. The bid on defendant's interest in the dwelling need not exceed the total amount of the judgments against defendant. The bid must exceed the amount of the homestead and the balance due on the deed of trust, and after defendant's wife receives her share, there must be some amount[13] remaining to partially satisfy plaintiffs' judgments. (See *Fisch, Spiegler, Ginsburg & Ladner* v. *Appel* (1992) 10 Cal.App.4th 1810, 1812 [13 Cal.Rptr.2d 471] [affirming without discussion involuntary sale to enforce money judgment where balance due on judgment was $317,562.66 and net proceeds of sale were $63,608.65]; and *Stoffel* v. *Dutton* (1985) 175 Cal.App.3d 1185, 1188 [221 Cal.Rptr. 346] [stating that a judgment lien "attaches to the value of the property in excess of the statutory homestead exemption and all liens and encumbrances *in existence* when the abstract of judgment is recorded." (Italics added.)].)

### V.*

. . . . . . . . . . . . . . . . . . . . . . . . .

### VI.

#### DISPOSITION

The order denying the application is affirmed.

Boren, P. J., and Gates, J., concurred.

A petition for a rehearing was denied August 31, 1993.

---

[13]The question of whether the courts have the equitable power to disallow a sale where the expected net recovery to the judgment debtor is a minimal sum is not before us.

*See footnote, *ante*, page 880.