NOT FOR PUBLICATION

**FILED**

MAR 3 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>RONALD A. NEFF,<br>    Debtor. | BAP Nos. CC-20-1029-FLG<br>      CC-20-1030-FLG<br>      (Related) |
| DOUGLAS JOHN DENOCE,<br>     Appellant,<br>v.<br>RONALD A. NEFF,<br>      Appellee. | Bk. No. 1:11-bk-22424-GM<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Geraldine Mund, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and GAN, Bankruptcy Judges.

## INTRODUCTION

Creditor Douglas John DeNoce argues that the bankruptcy court

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

erred in determining after an evidentiary hearing that chapter 7[1] debtor Ronald A. Neff was disabled and thus entitled to claim an enhanced homestead exemption in his real property. The bankruptcy court gave Mr. DeNoce ample opportunities to conduct discovery, properly excluded certain expert testimony, and made appropriate findings of fact. It also properly denied Mr. DeNoce's motion for reconsideration. We AFFIRM.

## FACTS[2]

### A.    Prepetition events

Dr. Neff was a practicing dentist, and Mr. DeNoce was his patient. In 2007, Dr. Neff performed multiple surgical procedures on Mr. DeNoce, but he botched the procedures. Mr. DeNoce sued Dr. Neff in state court for medical malpractice and recovered a judgment of $310,000.

When he treated Mr. DeNoce, Dr. Neff had a long history of drug and alcohol abuse, which led to a criminal conviction and the eventual revocation of his dental license. In March 2010, he applied for disability benefits from the Social Security Administration ("SSA"). The SSA

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We borrow portions of the factual background from our prior decision in this case. *See Neff v. DeNoce (In re Neff)*, BAP No. CC-12-1664-KiTaD, 2014 WL 448885 (9th Cir. BAP Feb. 4, 2014). We exercise our discretion to review the court's docket, as appropriate, *see Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008), but we have not "scour[ed] the record to try to make [appellant's] case of clear error[,]" *Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC)*, 465 B.R.

2

determined that he had become disabled on January 30, 2007 and awarded him payments from March 2009.

## B.    Dr. Neff's bankruptcy cases

After two unsuccessful chapter 13 filings, Dr. Neff filed a chapter 7 petition in 2011. He claimed a disability homestead exemption of $175,000 against his real property under California Code of Civil Procedure ("CCP") section 704.730(a)(3)(B), rather than the standard homestead exemption of $75,000.

Mr. DeNoce objected to the enhanced homestead exemption ("Exemption Objection"). He contended that Dr. Neff was able to work and was not disabled.

Dr. Neff opposed the Exemption Objection and requested an evidentiary hearing. The bankruptcy court declined to hold an evidentiary hearing. It determined that Dr. Neff was able to engage in "substantial gainful employment" under CCP section 704.730(a)(3)(B) and sustained the Exemption Objection on that basis, allowing only the standard homestead exemption. The parties cross-appealed the order to this Bankruptcy Appellate Panel ("BAP").

## C.    The first BAP appeal

On appeal, the BAP held that Dr. Neff "was entitled to a presumption that he was disabled and unable to engage in substantial gainful

525, 545 (9th Cir. BAP 2012), *aff'd*, 578 F. App'x 644 (9th Cir. 2014).

3

employment within the meaning of the statute [CCP § 704.730(a)(3)(B)]." *In re Neff*, 2014 WL 448885, at *9. The panel concluded that Mr. DeNoce had not produced evidence to rebut the presumption, let alone carried his ultimate burden of proof and persuasion. Thus, the BAP vacated that part of the bankruptcy court's order and remanded.

## D.    Evidentiary hearings on remand

On remand, the bankruptcy court scheduled an evidentiary hearing to determine whether Dr. Neff was entitled to the enhanced homestead exemption. The court allowed Mr. DeNoce extensive discovery opportunities over several years.

Mr. DeNoce tried to obtain Dr. Neff's SSA claims file. In 2017 (three years after remand), he submitted to the SSA a request for all records and reports regarding the disability determination and included Dr. Neff's consent authorizing release of the records.[3]

After much delay, Mr. DeNoce received some records from the SSA. He initially told the bankruptcy court that written discovery was complete. However, he later changed his story: he told the court that he had obtained a disc from the SSA with only incomplete records and that he had destroyed the disc.

---

[3] The bankruptcy court stated in its decision that Mr. DeNoce prepared the consent that Dr. Neff signed. Mr. DeNoce argues on appeal that Dr. Neff's counsel prepared it, so any deficiency in the production of records is Dr. Neff's fault. But for the reasons we give below, this is irrelevant: Mr. DeNoce subsequently failed to take appropriate action to obtain the SSA file and support his objection.

The court held a two-day evidentiary hearing in November 2017, at which Dr. Neff testified at length. The bankruptcy court overruled the objection to the enhanced objection, finding that Dr. Neff could not earn more than $7,200 annually and therefore would not have "substantial gainful employment."

Mr. DeNoce filed a motion for a new trial. The court granted the request in part and allowed Mr. DeNoce to call Dr. Neff and four doctors whom Mr. DeNoce said had relevant information: Dr. Goldsmith (the SSA's examining psychiatrist), Dr. Bilik (the SSA's review psychologist), and two of Dr. Neff's treating physicians, Dr. Okhovat and Dr. Hersel.

The bankruptcy court heard extensive testimony from Drs. Hersel and Okhovat over three days in early 2019. Mr. DeNoce had subpoenaed records from Drs. Bilik and Goldsmith, but Dr. Bilik refused to comply, and Dr. Goldsmith had passed away. An attorney representing the SSA explained that SSA regulations protect its consultants such as Dr. Bilik from testifying.[4] She also explained that Mr. DeNoce could obtain documents from Dr. Neff's SSA file if Dr. Neff signed a consent. Dr. Neff agreed to sign a consent, but he later changed his mind. Mr. DeNoce apparently took no further steps to obtain the SSA documents.

In lieu of Dr. Bilik's testimony, the bankruptcy court allowed

---

[4] Mr. DeNoce claims that this proves that the court misled him, because it had previously instructed him to proceed by subpoena. But it was not the court's job to give Mr. DeNoce legal advice.

Mr. DeNoce to "hire another psychiatrist to conduct the review of the Goldsmith and Bilik reports." It referred to this expert as a "review psychiatrist"[5] who would be limited to reviewing the reports by Drs. Goldsmith and Bilik.

Mr. DeNoce sought to call John Meyers as his expert witness. Mr. Meyers was neither a psychiatrist nor a psychologist. In fact, he was not a doctor at all. Rather, he had experience reviewing SSA disability submissions and had provided expert opinion testimony at administrative hearings. At a status hearing, the court addressed the scope of Mr. Meyers' testimony. It again ordered that Mr. Meyers would be limited to Dr. Bilik's role (i.e., as the SSA's review psychologist/psychiatrist).

On the morning of Mr. Meyers' scheduled testimony, Dr. Neff filed a bare-bones motion to exclude Mr. Meyers' testimony. He argued that Mr. DeNoce was belatedly trying to introduce expert testimony as to Dr. Neff's employment capacity.

The bankruptcy court agreed that Mr. Meyers' proposed testimony was beyond the scope of what it had allowed. It held that Mr. Meyers did not meet the requirements of its order concerning Dr. Bilik's replacement, so it did not allow him to testify. It only admitted portions of Mr. Meyers' report that concerned his analysis of Drs. Goldsmith's and Bilik's reports and excluded the portions of the report about Dr. Neff's ability to work.

---

[5] The court apparently thought that Dr. Bilik was a psychiatrist, but he was actually a psychologist.

## E.    Memorandum opinion

The bankruptcy court overruled the Exemption Objection ("Exemption Objection Order").

Based on the evidence, the court found that Dr. Neff was "seriously physically disabled at the time that the bankruptcy was filed . . . . He is suffering from a degenerative condition and . . . there is no possibility of substantial improvement." It found Dr. Neff credible and stated that his testimony was bolstered by Drs. Okhovat and Hersel.

Next, the court considered whether Dr. Neff could engage in substantial gainful employment on the bankruptcy petition date. Because the SSA had awarded Dr. Neff disability benefits, Mr. DeNoce had to overcome the presumption of an inability to engage in substantial gainful employment. However, the court held that Mr. DeNoce had failed to offer any competent evidence to overcome the presumption, largely due to his failure to obtain the SSA records. It accepted Dr. Neff's testimony that he could only earn $7,200 per year as a part-time dental assistant.

As to the lack of the SSA records, the bankruptcy court placed the blame squarely on Mr. DeNoce. It found his explanations contradictory and not credible.

The bankruptcy court thus concluded that Dr. Neff was physically disabled on the petition date and could not engage in substantial gainful employment.

7

**F.      Motion for reconsideration**

Mr. DeNoce timely filed a motion for relief from the Exemption Objection Order ("Reconsideration Motion"). He focused on the prior bad behavior of Dr. Neff and his attorney. He also argued that the court should have admitted Mr. Meyers' report in full and allowed Mr. Meyers to opine as to whether the SSA properly determined that Dr. Neff was disabled. The court rejected Mr. DeNoce's arguments without a hearing.

Mr. DeNoce timely appealed from the Exemption Objection Order and order denying the Reconsideration Motion.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in overruling Mr. DeNoce's Exemption Objection.

(2) Whether the bankruptcy court erred in denying the Reconsideration Motion.

## STANDARDS OF REVIEW

The right of a debtor to claim an exemption is a question of law we review de novo. *Kelley v. Locke (In re Kelley)*, 300 B.R. 11, 16 (9th Cir. BAP 2003). The bankruptcy court's findings of fact with respect to a claimed exemption are reviewed for clear error. *Id.*

"De novo review requires that we consider a matter anew, as if no

8

decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

We review for an abuse of discretion the bankruptcy court's decision on a motion for reconsideration. *See Carruth v. Eutsler (In re Eutsler)*, 585 B.R. 231, 235 (9th Cir. BAP 2017) (citations omitted). Similarly, we review evidentiary rulings on the admissibility of expert witness testimony for an abuse of discretion. *Kelly v. MTS Inc.*, 5 F. App'x 755, 756 (9th Cir. 2001). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or if its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver, Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

**A.    The bankruptcy court did not err in overruling Mr. DeNoce's Exemption Objection.**

Mr. DeNoce argues that the bankruptcy court erred in denying him the opportunity to obtain the SSA claim file and introduce evidence from his expert, Mr. Meyers. The bankruptcy court did not err.

**1.    The court properly stated the law.**

California permits its domiciliaries to claim only the exemptions allowable under state law. Cal. Civ. Proc. Code § 703.130. While "the federal courts decide the merits of state exemptions, . . . the validity of the claimed state exemption is controlled by the applicable state law." *In re Kelley*, 300 B.R. at 16. California exemptions are to be broadly and liberally construed in favor of the debtor. *In re Gardiner*, 332 B.R. 891, 894 (Bankr. S.D. Cal. 2005). Eligibility for the California homestead exemption is determined as of the petition date. *In re Rostler*, 169 B.R. 408, 411 (Bankr. C.D. Cal. 1994).

When Dr. Neff filed his petition, California's standard homestead exemption was $75,000. That amount increases to $175,000 if the debtor qualifies for an enhanced homestead exemption, including if the debtor is:

> (B) A person physically or mentally disabled who as a result of that disability is unable to engage in substantial gainful employment. There is a rebuttable presumption affecting the burden of proof that a person receiving disability insurance benefit payments under Title II or supplemental security income payments under Title XVI of the federal Social Security Act satisfies the requirements of this paragraph as to his or her inability to engage in substantial gainful employment.

Cal. Civ. Proc. Code § 704.730(a)(3)(B).[6]

Under this provision, the court engages in "a two-part test to determine if a debtor is eligible for the disability exemption: the debtor

---

[6] This section was amended effective January 1, 2021 to increase the exempt amounts. Cal. Civ. Proc. Code § 704.730(a) (enacted Jan. 1, 2021).

must (1) have a physical or mental disability; and (2) as a result of that disability, be unable to engage in substantial gainful employment." *In re Neff*, 2014 WL 448885, at *8.

The bankruptcy court stated that the party objecting to a claimed exemption has the ultimate burden of persuasion. This is not entirely correct. While Rule 4003 provides that a claimed exemption is "presumptively valid," "where a state law exemption statute specifically allocates the burden of proof to the debtor, Rule 4003(c) does not change that allocation." *Diaz v. Kosmala (In re Diaz)*, 547 B.R. 329, 337 (9th Cir. BAP 2016) (construing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000)). In general, California law "has placed the burden of proof on the party claiming the exemption." *Id.* But a debtor who is receiving certain disability benefits enjoys a presumption on one of the two elements of entitlement to the enhanced homestead exemption. The bankruptcy court's statement thus slightly oversimplified the allocation of the burden of proof. The bankruptcy court's error was harmless, however, because the evidence and the presumption overwhelmingly supported the claimed exemption.

**2.      The court properly found that Dr. Neff was disabled.**

The first prong of the statutory test asks whether Dr. Neff suffered from a mental or physical disability. It is undisputed that the SSA determined that Dr. Neff was disabled. The bankruptcy court determined, after evidentiary hearings spanning approximately two years, that Dr. Neff was physically disabled. We discern no reversible error.

Mr. DeNoce's opening brief does not clearly challenge the court's determination that Dr. Neff was "seriously physically disabled" and showed "no possibility of substantial improvement." We do not consider issues that an appellant does not clearly and distinctly raise in the opening brief. *See Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1193 (9th Cir. 2006); *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 410 (9th Cir. BAP 2005). But even if Mr. DeNoce had challenged these findings, we would find no error. The extensive testimony from Dr. Neff[7] and his treating physicians amply supports these findings.

### 3. The court properly found that Dr. Neff could not engage in substantial gainful employment.

Mr. DeNoce instead focuses on the second prong: whether Dr. Neff could engage in substantial gainful employment. He argues that the bankruptcy court unfairly prevented him from obtaining and introducing evidence to support his case on this issue. We discern no reversible error.

In our earlier decision in this case, we held that, "to satisfy the second element of CCP § 704.730(a)(3)(B), the debtor must have been, at the time of petition, unable to '(1) perform meaningful mental or physical work-related activity; (2) in a competitive or self-employed position; (3) that normally results in pay or profit.'" We also observed that, "'any work' or

---

[7] The bankruptcy court heard Dr. Neff testify for two days in November 2017. Mr. DeNoce did not provide us a copy of these transcripts, so we are entitled to presume nothing in them would help his arguments on appeal. *See Gionis v. Wayne (In re Gionis)*, 170 B.R. 675, 680-81 (9th Cir. BAP 1994).

'part-time work' may not necessarily rise to the level of 'substantial' or 'gainful' employment," and that "the debtor must be physically, mentally and emotionally able to work enough hours, at a high enough net wage, to contribute materially to his or her support." *In re Neff*, 2014 WL 448885, at *9-10 (citations omitted).

Based on Dr. Neff's testimony, the bankruptcy court found that he could only earn $600 per month as a dental assistant, or $7,200 per year. The bankruptcy court did not clearly err in finding these facts.

### a. The SSA claim file

Mr. DeNoce argues that the court should have given him more opportunities to obtain the SSA claim file. We disagree.

The bankruptcy court gave Mr. DeNoce years to gather evidence to overcome the presumption in favor of Dr. Neff on the second prong. Mr. DeNoce says that his failure to obtain the SSA records was Dr. Neff's fault because Dr. Neff's counsel prepared the 2017 consent that proved insufficient. Even if he is correct, this does not explain or justify his decision to destroy the records that the SSA did produce or his failure to follow up promptly after the SSA refused to produce additional documents in reliance on the consent. If the initial consent form did not work, Mr. DeNoce should have promptly asked the court to compel Dr. Neff to sign a proper form or grant other appropriate relief. Instead, he did nothing for about two years.

We also reject Mr. DeNoce's attempt to excuse his failure to obtain

13

the SSA file when he eventually renewed his attempt to obtain that file in 2019. He claims that Dr. Neff at first agreed to sign a new release, then changed his mind. We do not approve of Dr. Neff's gamesmanship. But it was nonetheless Mr. DeNoce's responsibility to take prompt action after Dr. Neff reversed himself. The bankruptcy court did not abuse its discretion when it rejected Mr. DeNoce's tardy effort to conduct discovery.

### b.    Mr. Meyers' report and testimony

Mr. DeNoce argues that the court erred in excluding Mr. Meyers' testimony and part of his report. He contends that, with Mr. Meyers' evidence, he would have established that Dr. Neff was capable of gainful employment, earning up to $51,000 per year.

The court did not err. The court granted Mr. DeNoce's motion for a new trial and permitted him to offer testimony from four specified doctors whose testimony Mr. DeNoce had failed to secure in the first evidentiary hearings in 2017 (as well as additional testimony from Dr. Neff). Mr. DeNoce does not challenge the bankruptcy court's decision to limit the additional witnesses he could present at the new trial. When it turned out that two of those doctors (Dr. Bilik and Dr. Goldsmith) could not be compelled to testify, the court gave Mr. DeNoce another accommodation. It allowed him to offer expert testimony from a psychiatrist to interpret Drs. Bilik's and Goldsmith's reports and to fill the role that Dr. Bilik would have played as the review expert. Mr. DeNoce simply ignored the limitations: he offered Mr. Meyers as a witness, even though he was neither

14

a psychiatrist nor a psychologist, and he offered Mr. Meyers' analysis of Dr. Neff's earning capacity, even though Dr. Bilik did not even mention that issue. It is important to note that the court entered these orders approximately a year and a half after the first session of the evidentiary hearing. The bankruptcy court was within its discretion, at such a late stage in the proceedings, to limit the new expert testimony it would receive and exclude Mr. Meyers' testimony that exceeded those limits.

Mr. DeNoce claims that he was ambushed by the motion to exclude on the morning of Mr. Meyers' testimony and that it violated his due process rights. He argues that the court should have given him time to conduct research, brief the issue, and be heard. There was no ambush; as the bankruptcy court explained in its decision, Dr. Neff's counsel objected to Mr. Meyers' testimony at a status conference held about three months before the trial. Mr. DeNoce's argument also ignores the elementary fact that courts regularly (and properly) decide evidentiary issues during trials and evidentiary hearings based solely on oral presentations, without any written briefing. Further, in this case, the bankruptcy court heard nearly two hours of oral argument on the issue. Mr. DeNoce does not identify any argument that he could have made in a written response that he did not or could not have made during the extensive oral argument.

Mr. DeNoce was long aware of the limitations on the scope of Mr. Meyers' report and testimony. Those limitations were reasonable. The bankruptcy court did not deny Mr. DeNoce due process when it enforced

its prior orders.

### c. New evidence

Mr. DeNoce also contends that he introduced evidence at the evidentiary hearing that established that Dr. Neff was abusing prescription drug Versed, which would disqualify him from receiving SSA benefits and invalidate the SSA disability determination. Dr. Hersel testified that Dr. Neff "has told me recently that he was [using Versed], not back then." Mr. DeNoce summarily concludes that Dr. Neff "was shooting up Versed when he applied for SSA disability benefits."

However, Dr. Hersel's testimony does not establish when Dr. Neff was using Versed. Based on the record before us, Dr. Hersel's testimony did not discuss a timeframe for the drug use, and Mr. DeNoce was unable to elicit any definitive dates. This argument does not undermine the SSA disability determination.

Mr. DeNoce argues that Dr. Neff admitted that he could perform work as a dental assistant. However, this testimony merely suggests that Dr. Neff could perform some type of work in the dental field, not that it would be "substantial gainful employment." It does not establish how many hours per week Dr. Neff could work or how much money he could earn, given his disability.[8] Further, the bankruptcy court, as the trier of fact,

---

[8] Mr. DeNoce also argues that the bankruptcy court improperly penalized him for innocently referring to Mr. Meyers as "Dr. Meyers" and erroneously claiming that he had retained Mr. Meyers in 2017. While the bankruptcy court did point to these statements as examples of Mr. DeNoce's disingenuousness, we have found no

was free to give this evidence whatever weight it thought appropriate. We find no clear error.

Therefore, the bankruptcy court did not err in overruling the Exemption Objection.

## B. The bankruptcy court did not abuse its discretion in denying the Reconsideration Motion.

Mr. DeNoce argues that the court should have reconsidered the Exemption Objection Orders. The bankruptcy court did not abuse its discretion.

Because Mr. DeNoce filed the Reconsideration Motion within the fourteen-day period after the entry of the Exemption Objection Order, we examine his arguments under Civil Rule 59, made applicable in bankruptcy by Rule 9024. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001) ("A 'motion for reconsideration' is treated as a motion to alter or amend judgment under [Civil Rule] 59(e) if it is filed within [fourteen] days of entry of judgment. Otherwise, it is treated as a [Civil] Rule 60(b) motion for relief from a judgment or order." (citation omitted)). The Ninth Circuit has stated that, "[u]nder [Civil] Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the

indication in the record that this issue affected the court's decision. It excluded Mr. Meyers' testimony because his opinions exceeded the scope of the court's orders,

controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (citation omitted).

Mr. DeNoce argues that he did not realize that the expert to replace Dr. Bilik was supposed to be a psychiatrist. But the court's orders said exactly that; no literate person could have misunderstood them.[9] More importantly, the orders made clear that the expert was merely a "review expert" who would interpret and explain Drs. Bilik's and Goldsmith's reports; the court did not permit independent analysis of earning capacity or any other issue. Mr. DeNoce's failure to read and follow the court's clear directives is not excusable.

Mr. DeNoce also argues that the court improperly blamed him for the ineffective SSA release. As we stated above, he had years to obtain the records, and he squandered his chances.

Finally, he complains that Dr. Neff "ambushed" him on the morning of trial. As we explained above, the court properly limited Mr. Meyers' testimony and report in accordance with its earlier orders.

In short, Mr. DeNoce did not offer any newly discovered evidence, clear error, or a change in law warranting reconsideration. The bankruptcy court did not err in summarily denying the Reconsideration Motion.

---

and not because of Mr. DeNoce's representations.

[9] Although the court later acknowledged that it had not realized that Dr. Bilik was a psychologist and not a psychiatrist, Mr. Meyers was neither a psychiatrist nor a psychologist.

**CONCLUSION**

For the foregoing reasons, the bankruptcy court did not err in overruling the Exemption Objection and denying the Reconsideration Motion. We AFFIRM.